DAVENPORT v. COMSTOCK.

(Supreme Court, Appellate Division, Second Department. June 7, 1898.)

LIMITATION OF ACTIONS—PAYMENTS—QUESTION FOR JURY.

In an action on a promissory note for $6,000, dated in 1882, but representing an obligation of long standing, the defense was the statute of limitations. Numerous letters written within six years by the defendant to the deceased holder of the note were offered in evidence, each stating that he inclosed $23.75 for the current month's account, and one of them, in apparent response to a demand for money, admitting that the holder "had a legal right to ask for it," and stating that defendant had already paid $8,000 interest. The monthly payments would be at the rate of 5 per cent. on $6,000, and the total interest thereon to the date of the letter would approximate $8,000. *Held*, that the evidence required a submission to the jury of the question whether interest had been paid on the note within six years.

Appeal from trial term.

Action by Flora L. Davenport, executrix of Clara D. Lufkin, deceased, against George W. Comstock. From a judgment for defendant dismissing the complaint on the merits, plaintiff appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

George C. Case, for appellant.
John M. Hull, for respondent.

CULLEN, J. This action is brought on a promissory note, to which the defendant pleaded the statute of limitations. On the trial the court decided that the defense was conclusively established, and dismissed the complaint on the merits, which we treat as being equivalent to a direction of a verdict in favor of the defendant. The note in suit is as follows:

"$6,000.                                    Buffalo, N. Y., Sept. 1, 1882.

"One day after date (after date) we promise to pay, to the order of Mrs. D. H. Lamb, six thousand dollars, at ———, value received, with current rate of exchange in New York with interest.

                                        "Geo. W. Comstock.
                                        "Clara L. Comstock."

On the death of Mrs. Lamb, in January, 1885, the note passed to the plaintiff's intestate, Clara D. Lufkin, her daughter and only next of kin. Mrs. Lufkin died on November 24, 1894, leaving a will of which the plaintiff was appointed executrix. For a few years preceding her death Mrs. Lufkin lived in the city of Brooklyn, while the defendant lived in the city of Buffalo. Mrs. Lufkin was the mother of Clara L. Comstock, one of the makers of the note, and the wife of the defendant. Mrs. Comstock died some time prior to the year 1890. It is admitted by the pleadings that $300 had been paid on the principal of the note.

The note was outlawed on its face, and the plaintiff sought to relieve her claim from the bar of the statute of limitations by showing that the defendant had paid interest on the note up to the time of Mrs. Lufkin's decease. No indorsements of the payment of interest appear to have been made on the note. But the plaintiff put in evidence 14 letters from the defendant to her testator. The first bears date January 30, 1892. In that letter is found the following: "Herein find draft on N. Y., $23^{75}/_{100}$ dolls., for Jan'y acct." The remainder of the letter refers to family matters in no way connected with business or pecuniary transactions. In another letter of April 30, 1892, is the following: "Herein find my check, $23^{75}/_{100}$ dolls., for April acct." The other letters (with the exception of one) are dated August 31, 1892, June 28, 1893, September 28, 1893, November 27, 1893, December 15, 1893, January 31, 1894, March 3, 1894, March 30, 1894, April 28, 1894, May 31, 1894, and October 30, 1894. These letters are of the same general character as the one already mentioned. In each one of them is found the expression, "Herein find check [or draft] for $23^{75}/_{100}$ dolls., for ——— acct.," stating the month for which the check or draft was sent. In the several letters there is

hardly a variation in the form of this expression.　Another letter was put in evidence bearing date the 16th of May, 1892.　It is as follows:

"Buffalo, N. Y., May 16th, 1892.

"Dear Mother:　Your last 2 letters rec'd.　Regarding your request in the one just rec'd, I regret to say I am at present absolutely unable to comply with the same.　You speak of 'having a right to ask for it.'　True, legally you have; but if my life for the past 15 or 20 years does not entitle me to some consideration, as far as you and yours are concerned, then I have made an utter failure.　I have paid over 8,000 dolls. in cash interest on this debt, that has hung for over 20 years around my neck, like a millstone, and no one knows better than you that it is no fault of mine that I am so indebted.　You know that it was to help another, and not myself, that caused the loss of what otherwise would have been of gain to me, and for years I have borne the constant drain that I was not legally entitled to bear.　I am not finding any fault.　I have borne the burden cheerfully as I could, but I can bear no more, just at present.　I shall hope to make you a call, in the near future, as I may go to N. Y. soon.　Niel Warren sails for Europe on the Etruria next Saturday, about noon.　I may go· down to see him off, and attend to some business also.　The children have a little cold.　Such damp and cold weather.　They did not go to church yesterday, but are at school to-day.　Cherry trees in front of the house are in full bloom.　Furnace not out yet.　It is very backward in having warm weather.　Hoping to see you soon, and to find you all well, with love to all, I am, as ever,

"Yours, with love,　　　　　　　　　　　　　　　　　Geo."

This is all the evidence the plaintiff was able to produce showing a payment on account of the note within six years prior to the decease of her testator, and the question presented on this appeal is whether it was sufficient to justify or require the submission of the question to the jury for determination.

It may be doubtful whether the letter of May 16, 1892, is a sufficient acknowledgment to take the claim out of the statute of limitations, under the stringent rules laid down in this state.　In Purdy v. Austin, 3 Wend. 187, it was held that the acknowledgment of a debt from which the law could infer a promise to pay must be unqualified and unconditional, not only acknowledging its original justice, but its present existence.　The same was the rule declared in Bell v. Morrison, 1 Pet. 351.　These decisions were made at a time when the oral declarations of a defendant were sufficient to take a claim out of the statute.　It was thought that mere general declarations of a debtor by word of mouth, easily misunderstood if made, and easily fabricated if not made, are dangerous evidence.　It may be doubted whether the rule should be so stringent, since the law has required that the acknowledgment should be in writing, signed by the debtor.　The letter referred to certainly recognizes the fact that the defendant was indebted to the plaintiff's testator, for he says:　"I have paid over 8,000 dolls. in cash interest on this debt, that has hung for over 20 years around my neck, like a millstone."　But assuming the insufficiency of this letter as an acknowledgment of the plaintiff's claim, still it throws light on the other letters of the defendant.　From those letters it is certain that from January, 1892, until the death of the plaintiff's testator, the defendant paid her regularly $23.75 a month.　The note in suit on its face bears interest.　The sum paid to the deceased is exactly 5 per cent. on the amount unpaid on the note.　This may be mere coincidence, and too much

effect should not be given to it. If it were not conceded that the deceased held the defendant's obligation for a principal sum, these payments by the defendant would be insufficient to raise a presumption of the existence of the principal debt. But the plaintiff's claim being admitted, the coincidence of the monthly payments equal to the interest has evidential force; for a great part of circumstantial evidence necessarily rests on coincidence. Two of the defendant's letters inclosing checks or drafts for $23.75 bear date before the letter of May 16th, showing that the defendant had been accustomed before that time to give the deceased these regular monthly payments. In this series of letters there is not to be found an intimation that these payments proceeded from the bounty or generosity of the defendant. Meager as the reference to the nature of the payments is, it seems to imply the existence of some obligation on the part of the defendant to pay the deceased this monthly sum. It appears that the original debt had been standing a long time, for in defendant's answer it is alleged that the note in suit was given in renewal of a previous one, dated in the year 1869. Interest on the debt from the time it is said to have been first contracted would approximate the sum named in the defendant's letter of May 16, 1892, as $8,000. It would thus seem that the character of the obligation, the relation between the parties, the regularity of the monthly payments, and all the attendant circumstances, tend strongly to establish the credibility and reasonableness of the appellant's claim that these payments were for the interest on the note. That the testimony is meager results from the fact that Mrs. Lufkin is dead.

In Crow v. Gleason, 141 N. Y. 489, 36 N. E. 497, it was held that "if there be a mere naked payment of money without anything more to show on what account, or for what reason the money was paid, the payment will be of no avail under the statute. The payment must be made under such circumstances as to show a recognition of a larger debt remaining unpaid." But the question here is whether the attendant circumstances do not fairly authorize the inference that these payments were made as interest on the claim; for, if paid for interest, the recognition of the principal debt necessarily results. While there must be reasonable evidence of the identity of the debt sued for with that on account of which the part payment has been made, still, where a payment appears to have been made on account of an existing debt, the jury are warranted in considering it as applied to the debt sued for, unless there is evidence of other existing debts. Wood, Lim. § 108. In Whitney v. Bigelow, 4 Pick. 110, it was held that "a general acknowledgment of being indebted to the plaintiff was sufficient, prima facie, to take the demand in suit out of the statute, and the onus lies on the defendant to prove that he had reference to a different demand." In Bailey v. Crane, 21 Pick. 323, it is said: "An acknowledgment, to take a debt out of the statute, must satisfactorily appear to refer to the very debt in question. As the defendant has not shown that there was any other debt due from him to the plaintiff, his letter must be presumed to apply to the note in suit." In the case before us the plaintiff put the defendant on the stand as a witness. His evidence seems

by no means frank and ingenuous. When asked the meaning of his letter of May 16, 1892, he testified that he did not remember the letter. On being further pressed to say what he meant when he wrote, "True, you have a right to ask for it," he answered, "The supposition is she asked for money in the letter." When asked whether he had any transaction with his mother-in-law except the note in suit, he replied he did not think that was a business transaction with her at all. Then, in answer to a repetition of the question, he said, "Money transaction; yes." What the money transaction was is not stated. The jury were not obliged to credit this statement of the defendant; nor was the plaintiff, because she put the defendant on the stand, precluded from asking the jury to disbelieve his testimony in this respect. On the whole, we think the case should have been submitted to the jury to determine, as matter of fact, whether the defendant had paid interest on the note within six years prior to the decease of the plaintiff's testator.

The judgment should be reversed, and a new trial granted, costs to abide the event. All concur.